UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| BARRY GLENN HARDISON, )<br>)<br>)<br>    **Plaintiff,** )<br>)<br>v. )<br>)<br>LOIS WAGSTROM, MD. P.C., and LOIS )<br>WAGSTROM, M.D. individually, )<br>)<br>    **Defendants,** ) | Case No. 3:13-cv-0495<br>Judge Aleta A. Trauger |

## MEMORANDUM

Pending before the court are the defendants' Motion for Summary Judgment (Docket No. 46), Motion to Strike (Docket No. 57), and Motion to Modify Protective Order (Docket No. 27),[1] all of which are opposed by the plaintiff. For the reasons stated herein, the Motion to Strike will be granted, the Motion for Summary Judgment will be granted, the Motion to Modify will be denied as moot, and the case will be dismissed with prejudice.

## BACKGROUND

### I. Factual Background

This is a health care liability action against plastic surgeon Dr. Lois Wagstrom and her medical office, Lois Wagstrom, M.D., P.C. ("Wagstrom P.C."), which is located in Nashville, Tennessee. The plaintiff, Dr. Hardison is a physician who practices in Kentucky.

In early 2012, the plaintiff consulted with Dr. Wagstrom about having elective plastic surgery, consisting of a "facelift" and other related procedures. On February 22, 2012, Dr.

---

[1] The Motion to Modify was referred to the Magistrate Judge on August 1, 2014. As explained herein, the court's ruling on the defendants' Rule 56 motion renders the Motion to Modify moot.

1

Wagstrom performed surgery on the plaintiff at a facility in Nashville. The day after the surgery, the plaintiff went to Dr. Wagstrom's office for a post-operative visit, where he was seen by Rebecca Schepisi, a Registered Nurse on Dr. Wagstrom's staff. The plaintiff alleges that, following the surgery and the post-operative visit, he developed complications that resulted in potentially permanent facial disfigurements, including a disfigurement referred to as "excessive tightness."

On May 23, 2013, the plaintiff filed a Complaint asserting Tennessee health care liability claims against Dr. Wagstrom individually and against Wagstrom, P.C. on a vicarious liability basis.[2] (Docket No. 1.) Although the claims involve the actions of both Dr. Wagstrom and Nurse Schepisi, the court will refer only to the actions of Dr. Wagstrom for ease of reference.

## II. Procedural History

### A. Background Concerning Dr. Dowden

As explained herein, following Dr. Wagstrom's procedure and before this litigation commenced, Dr. William Dowden, a plastic surgeon who practices in Kentucky, sent a letter to Brian Schuette (plaintiff's counsel in this action) on May 1, 2013 (hereinafter, the "5/1/13 Dowden Letter"), discussing potential treatment options for the plaintiff's facial disfigurements. (*See* Docket No. 53, Attach. No. 1.) On May 23, 2013, approximately three weeks after Dr. Dowden sent this letter, the plaintiff filed his Complaint. On June 5, 2013, Dr. Dowden

---

[2] The parties agree that Tennessee law governs the plaintiff's claims. Before July 9, 2012, these types of claims were generally referred to as "medical malpractice" claims. Effective July 9, 2012, the Tennessee legislature enacted the Tennessee Health Care Liability Act, Tenn. Code Ann. § 29-26-101 *et seq.*, which refers to these types of claims as "health care liability" claims. *See* Tenn. Code Ann. § 29-26-101(a)(1) (2014). Because Tennessee substantive law applies here, the court will use the updated terminology.

performed corrective surgery on the plaintiff. (Docket No. 55, Attach. No. 3.) In so doing, Dr. Dowden became a treating physician with discoverable information about the plaintiff.

### B. Case Management Deadlines

On August 16, 2013, the court entered an initial Case Management Order. (Docket No. 9.) In this order, the court set a deadline of September 3, 2013 for the parties to file their initial disclosures under Fed. R. Civ. P. 26. (*Id.* ¶ E.) On September 5, 2013, two days after that deadline passed, the plaintiff served his initial disclosures on the defendant. (Docket No. 12, Ex. A.) These disclosures identified five individuals with discoverable knowledge, including Dr. Dowden, who had performed corrective surgery on the plaintiff several months earlier. (*Id.* at 1.g.) The plaintiff's initial disclosures did not identify Dr. Dowden as a potential testifying expert. Instead, as with the other treating physicians identified in the disclosure, it stated that Dr. Dowden was "expected to have discoverable information consistent with his evaluation and treatment of Dr. Hardison," including information expressed in his "evaluation report and attached medical records dated May 1, 2013." (*Id.*)

The plaintiff's initial disclosures attached five pages of records from Dr. Dowden, including the pre-litigation 5/1/13 Dowden Letter that preceded the plaintiff's corrective surgery. In that letter, Dr. Dowden states that he is enclosing "a copy of the evaluation on [sic] Dr. Hardison," including "the outline for the treatment sessions[.]"[3] Dr. Dowden's letter states his observations concerning his review of unspecified "information" provided to him by plaintiff's counsel. He outlines the potential causes of the plaintiff's injury, explains available treatment options, and makes recommendations for mitigating the lasting complications from the plaintiff's original surgery. The letter ends with the following statement: "I am sure the notes will

---
[3] The copies of the letter in the record do not contain the referenced enclosure.

stimulate further questions. Please let me know what I can do to help resolve this issue." The letter includes no statement by Dr. Dowden that the plaintiff had retained him as a testifying expert or that his letter included any expert opinions (on any topic) that Dr. Dowden would seek to present in a future trial. Furthermore, the letter did not contain a description of the information on which Dr. Dowden relied, the facts or specific documents he considered, a list of exhibits he would use to support an expert opinion, a list of his publications, or a list of all cases in the past four years in which he had testified as an expert witness. In other words, the pre-litigation 5/1/13 Dowden Letter was not, and did not purport to be, a testifying expert report or related disclosure under Rule 26(a)(2)(B).

On March 12, 2014, upon motion by the defendant (Docket No. 13), the court entered an Amended Case Management Order (Docket No. 23), which reset the plaintiff's expert disclosure deadline to June 15, 2014. On June 3, 2014, upon motion by the defendant (Docket No. 24), the court entered a Second Amended Case Management Order (the "CMO"), in which the court again reset the case management deadlines. In most relevant part, the court ordered the plaintiff to identify and disclose all expert witnesses and expert reports on or before August 31, 2014, ordered the defendant to do the same by October 1, 2014, ordered the parties to complete expert depositions by November 15, 2014, and ordered the parties to file dispositive motions on or before January 1, 2015. (*Id.* ¶¶ H and K.)

The plaintiff did not make any expert disclosures on August 31, 2014, nor did the plaintiff request an extension of the deadline. By contrast, on October 1, 2014 – in compliance with the CMO – the defendants disclosed two retained testifying experts, Dr. Malcolm W. Marks and Dr. Bruce Shack, M.D.

### III. **The Rule 56 Motion and the Plaintiffs' Belated Disclosure of Dr. Dowden**

On October 3, 2014, three days after the plaintiff failed to file an expert report in compliance with the CMO, the defendants filed the instant Motion for Summary Judgment.[4] In support of the motion, the defendants filed a Statement of Facts (Docket No. 47) and a Notice of Filing (Docket No. 48) that attaches three affidavits: (1) the Affidavit of Lois Wagstrom, M.D.; (2) the Affidavit of Malcolm W. Marks (one of the defendant's testifying experts); and (3) the Affidavit of Bruce Shack, M.D. (the defendant's other testifying expert). In substance, both Marks and Shack opine that, to a reasonable degree of medical probability: (1) Dr. Wagstrom's preoperative care and informed consent process, surgical techniques, and post-operative care all complied with the relevant standard of care; and (2) the plaintiff's post-operative complications were recognized complications for the surgical procedures he selected and nothing Dr. Wagstrom or her staff did caused or contributed to the plaintiff's post-operative complications. In support of their motion, the defendants argue (and the plaintiff does not dispute) that the plaintiff must present expert testimony to prove each element of his health care liability claims, including establishing the standard of care, establishing that it was violated, and proving proximate causation. (Docket No. 45 at pp. 5-6.) The defendants argue that their affidavits affirmatively refute each element of the plaintiff's health care liability claim, that the plaintiff cannot establish a genuine dispute of material fact because he never disclosed an expert witness to rebut the defendants' expert proof, and that summary judgment for the defendants is therefore warranted. *See Bowman v. Henard*, 547 S.W.2d 527, 531 (Tenn. 1977); *Miller v. Birdwell*, 327 S.W.3d 53, 55 (Tenn. Ct. App. 2010); *see also Harris v. Buckspan*, 984 S.W.2d 944, 945 (Tenn. Ct. App. 1998) (plastic surgery cases not within knowledge of laymen).

---

[4] The summary judgment deadline is January 1, 2015. The defendants filed their Rule 56 motion three months in advance of the deadline.

Under the CMO, the plaintiff's response to the defendant's Rule 56 motion was due on October 23, 2014. The plaintiff did not file a response on that date. Instead, at approximately 5:00 p.m. on October 24, 2014, the plaintiff filed a belated Motion for Extension of Time to File Response to Defendants' Motion for Summary Judgment. (Docket No. 50.) In the motion, counsel for the plaintiff stated that, "due to scheduling issues[,] he was only recently able to confer with Dr. Robert Dowden, the Plaintiff's standard of care expert, in an effort to understand the contentions of the Defendants' experts." The defendants opposed the extension request, arguing that the plaintiff had not explained the delay and that the motion was futile because, regardless of whether the court granted the extension, the plaintiff would be precluded from presenting expert testimony at trial as a sanction under Fed. R. Civ. P. 37. (Docket No. 51.) The court granted the extension request only in part, ordering the plaintiff to respond to the Rule 56 motion by November 6, 2014. (Docket No. 52.)

On November 5, 2014, the plaintiff filed a document styled as "Plaintiff's Supplemental Rule 26 Disclosures." (Docket No. 53.) In this document, the plaintiff purports to "supplement his Rule 26 Expert Disclosure" with the following statement: **"William L. Dowden, M.D., F.A.C.S**. Plaintiff attaches hereto a letter from Dr. Dowden dated November 3, 2014 supplementing his opinions previously outlined in his May 1, 2013 report." The document attaches two letters that the plaintiff docketed as "reports": the first is the 5/1/13 Dowden Letter, which is not an expert report within the meaning of Rule 26(a); the second is a November 3, 2014 letter from Dr. Dowden to Mr. Schuette (the "11/3/14 Dowden Letter"). In its entirety, the letter states as follows:

> Dear Mr. Schuette,
>
> I would like to supply an addendum to the cover letter forwarded to you May 1, 2013 regarding the probable cause, the resulting problems and the proposed

> solutions for the injuries Dr. Hardison sustained when he underwent surgery by Dr. Lois Wagstrom. Please keep in mind the original request made to me was to assess the treatment, determine the most likely cause of injury and outline possible corrective steps. *At that time, neither a request, nor reference, was made to possible deviation from standard of care*.
>
> This supplement to the report should reflect it is my considered opinion after reviewing the record, obtaining a history from the patient, performing an examination and subsequent corrective surgery, the injuries were a direct result of deviation from standard of care.

(Docket No. 53, Attach. No. 2 ("11/3/14 Dowden Letter").) In Dr. Dowden's own words in this letter, he makes clear that his May 1, 2013 letter did not contain any expert opinions concerning the standard of care and that he had not been asked to offer an opinion on that issue at the time. Also, the 11/3/14 Dowden Letter and the associated "Supplemental Disclosure" do not comply with the expert disclosure requirements of Rule 26(a)(2)(B) in multiple –perhaps all –respects. At a minimum, they do not identify any exhibits that would be used to support Dr. Dowden's opinion, his qualifications (including a list of all publications authored in the previous 10 years), a list of all other cases in which he has testified as an expert within the past four years, or a statement concerning his compensation in the case. Furthermore, they do not clearly state all of Dr. Dowden's opinions.[5]

On November 6, 2014, the plaintiff filed a Response in opposition to the Motion for Summary Judgment. (Docket No. 54.) In support of its opposition, the plaintiff has filed a Response to Defendants' Statement of Undisputed Facts (Docket No. 55), which attaches three documents: (1) the 5/1/13 Dowden letter; (2) the 11/3/14 Dowden Letter; and (3) the Declaration of William L. Dowden, M.D., F.A.C.S. In his declaration, Dr. Dowden avers that he performed

---

[5] As explained herein, Dr. Dowden offers additional opinions (*i.e.*, opinions not expressed in his letter) in his declaration filed in support of the plaintiff's Response to the Motion for Summary Judgment.

7

a revision facelift on the plaintiff on June 5, 2013 and that, to a reasonable degree of medical certainty, the complications suffered by the plaintiff from Dr. Wagstrom's initial facelift were the result of Dr. Wagstrom's failure to adhere to the appropriate standard of care. The declaration also contains opinions that were not stated in the 11/3/14 Dowden Letter. (*See* Dowden Declaration ¶¶ 6, 7, 10-12.)[6] In his Response, the plaintiff offers no explanation for missing the August 31, 2014 expert disclosure deadline. The plaintiff complains that excluding Dr. Dowden's opinions would be a "draconian" sanction, stating that Dr. Dowden's opinions are "obviously vital to the Plaintiff's case" and that "[e]xcluding [Dr. Dowden] would present plaintiff from presenting his claims at all." (Docket No. 54 at p. 9.)

On November 11, 2014, the defendants filed a Reply with respect to their Motion for Summary Judgment (Docket No. 56) and a Motion to Strike the Dowden Declaration under Rule 37(c)(1) (Docket No. 57). On November 25, 2014, when the response was due, the plaintiff did not file a Response to the Motion to Strike. Instead, on November 26, 2014, the day after the deadline had passed, the plaintiff filed a belated Motion for Enlargement of Time to Respond (Docket No. 58), which the court granted (Docket No. 61). On November 28, 2014, the plaintiff

---

[6] In the plaintiff's Response, the plaintiff also quotes liberally from a (presumably) confidential demand letter from the plaintiff to counsel for the defendants. The letter is not attached as an exhibit, and it is not clear when it was sent. The court hesitates to disclose the contents of a confidential settlement communication (as plaintiff's counsel has here) with specificity in an opinion that is public. At a general level, the quotations from the letter indicate that it was sent at an unspecified point after Dr. Wagstrom's deposition and states that Dr. Wagstrom had offered some explanations for the plaintiff's injuries at her deposition, that plaintiff's counsel had reviewed those explanations with Dr. Dowden, and that Dr. Dowden disagreed with them for reasons explained by plaintiff's counsel in the demand letter.

filed a Response to the Motion to Strike (Docket No. 60).[7]  In the Response, the plaintiff does not dispute that he now seeks to present Dr. Dowden as a testifying expert subject to Rule 26(a)(2)(B) disclosure requirements, that he failed to make the required Rule 26(a)(2)(B) disclosures under the deadline set forth in the CMO, that the failure to do so was not substantially justified, and that precluding testimony from Dr. Dowden at trial would be "fatal to the plaintiff's claim" and would require a judgment for the defendants.  (Docket No. 60 at pp. 2 and 12.)  However, the plaintiff contends that his failure to comply with the CMO and Rule 26 was harmless, that the "supplemental disclosure" (referring to the plaintiff's November 5, 2014 Notice of Filing) "cured" any Rule 26(a)(2)(B) defects, and that, even if a sanction is warranted, exclusion of Dr. Dowden as a testifying expert is neither required nor appropriate under the circumstances.  The plaintiff again offers no explanation for his failure to comply with the CMO and, without explanation, states that missing the deadline was an "honest mistake."

## ANALYSIS

Because the parties agree that the plaintiff cannot survive summary judgment without expert testimony from Dr. Dowden at trial, the court will address the defendants' Motion to Strike first.

**I. Motion to Strike**

    **A. Rule 37 Standard**

By reference to *Roberts ex rel. Johnson v. Galen of Va., Inc.*, 325 F.3d 776 (6th Cir. 2003), the defendants argue that Fed. R. Civ. P. 37(c)(1) requires the court to exclude Dr. Dowden's expert opinions from trial, unless the plaintiff's failure to disclose those opinions was

---

[7] The plaintiff filed his Response shortly before the court granted the then-pending request for an extension of time to respond.

substantially justified or harmless. That is an overstatement of Rule 37(c)(1) and of the Sixth Circuit's holding in *Roberts*.

> The text of Rule 37(c)(1) states as follows:
>
> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In additional *or in lieu of this sanction*, the court, on motion and after giving an opportunity to be heard:
>
>> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
>>
>> (B) may inform the jury of the party's failure; and
>>
>> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Fed. R. Civ. P. 37(c)(1) (current 2014) (emphasis added). In *Roberts*, the Sixth Circuit specifically rejected the plaintiff's argument that, under this rule, the only appropriate sanction for failure to make a required expert disclosure under Rule 26(a) was exclusion of the expert's testimony from trial. 325 F.3d at 783-84. As the Sixth Circuit explained:

> Rule 37(c)(1) provides several remedies to a district judge who is faced with violations of the mandatory disclosure provisions of Rule 26. The provision on sanctions explicitly states in pertinent part that "in lieu of this sanction of [total exclusion], the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions." Rule 37(c)(1) does not compel the district judge to exclude testimony in its entirety.

Thus, a district judge retains discretion to fashion an equitable remedy that is "consonant with both the text and logic of Rule 37(c)(1)." *Id.* at 784; *see also Sommer v. Davis*, 317 F.3d 686, 692 (6th Cir. 2003) (stating that the Sixth Circuit will reverse "a court's invocation of Rule 37 sanctions only if we find an abuse of discretion"). Of course, excluding an expert witness's testimony for failure to comply with the court's expert disclosure deadline is an available option

that courts within this circuit commonly exercise. *See, e.g.*, *Campos v. MTD Prods., Inc.*, 2009 WL 2252257, *9 (M.D. Tenn. July 24, 2009); *Hall v. Furest*, 2006 WL 2375677, at *3 (E.D. Mich. Aug. 16, 2006).

In sum, the court faces three questions here: (1) did the plaintiff violate Rule 26(a) by failing to submit an expert report from Dr. Dowden in compliance with Rule 26?; (2) was that failure substantially justified or harmless?; and (3) what sanction should the court impose?

### B. Application

#### 1. Violation of Rule 26(a)

The plaintiff unquestionably violated Rule 26(a) by failing to disclose Dr. Dowden as a testifying expert and by failing to file an expert report from Dr. Dowden (and other related disclosures) in compliance with the deadlines set forth in the CMO. In support of the plaintiff's Response to the Motion for Summary Judgment, Dr. Dowden seeks to offer expert opinions concerning whether the defendants breached the standard of care at any point before, during, and after the plaintiff's surgery. Dr. Dowden did not file an expert report disclosing these opinions, and he himself acknowledges that he was not asked to opine on the standard of care until after the expert deadline and after the defendants filed their Motion for Summary Judgment. The plaintiff does not dispute these points. In fact, even after being placed on notice of the deficiency multiple times, the plaintiff still has not made a full disclosure of Dr. Dowden's opinions or made the required related disclosures in compliance with Rule 26(a)(2)(B).

#### 2. Failure to Disclose Was Not Substantially Justified or Harmless

The plaintiff does not contend that his failure to comply with Rule 26(a) was substantially justified, nor is any justification (let alone a "substantial" one) evident to the court.

11

As to whether the error was "harmless," the burden is on the potentially sanctioned party – here, the plaintiff – to show harmlessness. *Roberts*, 325 F.3d at 782; *see also Hall*, 2006 WL 2375677, at *1. Generally, to show harmlessness, a plaintiff must show an "honest mistake on the part of a party coupled with sufficient knowledge on the part of the other party." *Sommer*, 317 F.3d at 692. Here, the plaintiff has not established either of these elements. The plaintiff states in the last paragraph of his Response to the Motion to Strike that the error was an "honest mistake," but he provides no explanation as to how or why the honest mistake was made. Whether the defendants breached the duty of care is an essential element of the plaintiff's health care liability claims. The plaintiff's expert deadline in this case was set forth unambiguously in the Second Amended Case Management Order. Without explanation, the plaintiff simply let this crucial deadline pass without making any type of formal expert disclosure under Rule 26(a) – let alone an insufficient disclosure –thereby failing to disclose a necessary expert opinion on an essential element of his case. The plaintiff is a sophisticated entity represented by counsel, the plaintiff was aware of the deadline, and the plaintiff simply ignored it until after the defendants filed their Motion for Summary Judgment. Indeed, even after being placed on notice, the plaintiff *still* has not made a disclosure that complies with Rule 26(a)(2)(B), and the plaintiff has never requested an extension from the court to correct his manifest non-compliance with Rule 26 or the CMO. These are not minor technical defects in a Rule 26 disclosure; they are failures to comply with court deadlines and essential expert disclosure requirements. In light of these considerations, the court finds that the plaintiff has not shown that the error was an "honest mistake." Because the non-compliance with Rule 26(a) was not an honest mistake, the failure was not "harmless," and sanctions are warranted. *See Jackson v. Steele*, 2013 WL 4520938, at

*4 (E.D. Ky. Aug. 26, 2013); *Blair v. GEICO Gen. Ins. Co.*, 917 F. Supp. 2d 647, 656 (E.D. Ky. 2013).

Furthermore, even if the plaintiff had shown that his wholesale failure to comply with the court's scheduling order was an honest mistake, the plaintiff has failed to show that the defendants had (a) "sufficient knowledge" that Dr. Dowden would testify as an expert and (b) "sufficient knowledge" of the opinions he now seeks to express in the Dowden Declaration. The plaintiff never disclosed Dr. Dowden as a testifying expert. The 5/1/13 Dowden Letter was not an expert report and the plaintiff's initial disclosures, which simply identified Dr. Dowden as a fact witness and attached the 5/1/13 Dowden Letter, did not constitute expert disclosures under the CMO or Rule 26(a)(2)(B). Even if the court were to consider the late-filed 11/3/14 Dowden Letter, it does not "cure" the plaintiff's failure to file a Rule 26(a)(2)(B) disclosure. The 11/3/14 Dowden Letter does not comply with Rule 26(a)(2)(B) in multiple respects. Furthermore, in the Dowden Declaration, Dowden attempts to offer opinions that exceed even the bare-bones conclusion stated in the 11/3/14 Dowden Letter.

For these reasons, the court finds that the plaintiff's failure to comply with Rule 26(a)(2)(b) and the CMO was not substantially justified or harmless.

### 3. Appropriate Sanction

The plaintiff argues that the court should not exclude Dowden as testifying expert. The court finds no basis to impose a lesser sanction. Without justification, the plaintiff failed to make a required expert disclosure on an issue for which expert testimony at trial is required. If there were some justification for missing the deadline, the plaintiff could have sought an extension of time from the court to make the required disclosure. Despite multiple opportunities, the plaintiff never did so. The plaintiff's failure to comply with the court's orders alone justifies exclusion,

because the Sixth Circuit has recognized that Fed. R. Civ. P. 16(f)(1)(C) grants district courts discretion to enforce its scheduling orders. *See Jackson*, 2013 WL 4520938, at *5 (citing *Estes v. King's Daughters Med. Ctr.*, 59 F. App'x 749, 752 (6th Cir. 2003)); *see also* Fed. R. Civ. P. 26(a)(2)(C) (a party must disclose its experts "at the times and in the sequence that the court orders"); *Campos*, 2009 WL 2252257, at *11.

Notably, even at this late stage, the plaintiff has yet to offer an alternative to exclusion of Dr. Dowden, and the plaintiff still has not made a disclosure concerning Dr. Dowden that complies with Rule 26(a)(2)(B). This continuing non-compliance also justifies exclusion of Dr. Dowden.

Finally, if the court were to permit Dr. Dowden to testify, it would require the court to reset the case management deadlines yet again, including extending the expert deadlines for both parties, and it would likely impose additional costs on the defendants to produce revised expert reports and to file a renewed Rule 56 motion (if needed).

In sum, the court finds that, under Fed. R. Civ. P. 37(c)(1), exclusion of Dr. Dowden as a testifying expert is warranted here. The court therefore will not consider Dr. Dowden's declaration in evaluating the defendants' Rule 56 Motion.

## II. **Motion for Summary Judgment**

The parties agree that, without expert testimony from Dr. Dowden, the plaintiff cannot survive summary judgment. Briefly, the defendants' Rule 56 motion is supported by affidavits from two independent experts, each of whom avers that, to a reasonable degree of medical probability, (1) Dr. Wagstrom and her staff did not violate the standard of care with respect to the plaintiff at any point, and (2) nothing Dr. Wagstrom or her staff did caused or contributed to

the plaintiff's injuries.[8] Having excluded Dr. Dowden as a sanction under Rule 37(c)(1), the plaintiff cannot present an expert to testify on his behalf at trial on these issues and, as a consequence, cannot present admissible expert testimony to rebut the affidavits of the defendants' testifying experts filed in support of the defendants' Rule 56 motion. Summary judgment in favor of the defendants is therefore warranted. *See Bowman*, 547 S.W.2d at 531; *Miller*, 327 S.W.3d at 55.

### III. Motion for Protective Order

The court's ruling on the Motion for Summary Judgment renders moot the Motion for Protective Order.

### CONCLUSION

The defendants' Motion to Strike will be granted, the defendants' Motion for Summary Judgment will be granted, the defendants' Motion to Modify Protective Order will be denied as moot, and the case will be dismissed with prejudice.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

---

[8] Dr. Wagstrom has also filed her own declaration, in which she purports to offer a self-serving opinion that she did not violate the standard of care. Although the plaintiff has not raised it as an issue, the court is skeptical that Dr. Wagstrom could serve as her own expert witness at trial on this material issue. Therefore, the court will rely only on the Marks Affidavit and the Shack Affidavit.